UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| KOSTMAYER CONSTRUCTION, LLC | CIVIL ACTION NO. 2:16-1012 |
|---|---|
| VERSUS | UNASSIGNED DISTRICT JUDGE |
| PORT PIPE & TUBE, INC. | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court are a Motion to Dismiss, or, Alternatively, Motion to Strike, filed by Defendant Port Pipe & Tube, Inc. ("Port Pipe") [Record Document 34] and an Appeal of the Magistrate Judge's Order Granting Plaintiff's Motion for Enlargement of Time Frame for Filing Motion for Class Certification, also filed by Port Pipe [Record Document 28]. The respective parties have filed opposition and reply briefs to the motion and appeal, all of which have been reviewed by the undersigned. For the reasons set forth below, the Motion to Dismiss, or, Alternatively, Motion to Strike is **DENIED**, and the Magistrate Judge's Memorandum Order of September 30, 2016 [Record Document 27] is **AFFIRMED**.

## I. BACKGROUND

On March 28, 2016, Kostmayer Construction, LLC ("Kostmayer") filed a putative class action in the Eastern District of Louisiana ("Complaint") against Port Pipe for violations of the Telephone Consumer Protection Act ("TCPA") as amended by the Junk Fax Prevention Act of 2005 ("JFPA"). [Record Document 1]. Kostmayer alleged it personally received from Port Pipe unsolicited faxes that violated the TCPA, the JFPA, and FCC regulations. [*Id.* at 9]. Kostmayer also

1

alleged that the unsolicited faxes "caus[ed] Plaintiff and Plaintiff Class to sustain statutory damages, in addition to actual damages, including but not limited to those contemplated by Congress and the FCC." [*Id.*] The complaint did not further explain the alleged damages.

On June 10, 2016, Port Pipe moved to dismiss the action on two grounds: (1) lack of subject matter jurisdiction because the Complaint did not allege concrete facts that would give rise to standing; and (2) improper venue because the Complaint did not allege that any action giving rise to the claims occurred in the Eastern District of Louisiana. [Record Document 8-1 at 3, 5–6]. In the alternative, Port Pipe moved to transfer the case to the Western District of Louisiana or the Southern District of Texas. [*Id.* at 7–8]. Kostmayer opposed Port Pipe's motion on both grounds, but subsequently consented to transfer; the case was transferred to this Court on July 7, 2016. [Record Documents 10, 15, and 17].

On August 18, 2016, Port Pipe filed a Motion for Protective Order Staying Discovery, pending the disposition of its Federal Rule of Civil Procedure 12(b)(1) Motion to Dismiss. [Record Document 20]. On August 22, 2016, Kostmayer filed a motion for an extension of time ("Motion for Enlargement of Time Frame"), requesting thirty days from the disposition of the Motion to Dismiss to move for class certification. [Record Document 22]. The Magistrate Judge granted both Port Pipe's Motion for Protective Order Staying Discovery and Kostmayer's Motion for Enlargement of Time Frame. [Record Document 27]. In granting Kostmayer's motion, the Magistrate Judge found that, while the motion itself was untimely, "the circumstances surrounding the failure to timely file the motion excuse this inadvertence." [*Id.* at 3]. Port Pipe appealed the decision of the Magistrate Judge in granting Kostmayer's Motion for Enlargement of Time Frame ("Appeal of the Magistrate's

Order"), arguing that the Magistrate Judge did not apply the correct legal standard. [Record Document 28].

On October 19, 2016, the Court granted Port Pipe's motion to dismiss for lack of subject matter jurisdiction because the Complaint failed to state a concrete injury. [Record Document 30]. The Court dismissed Kostmayer's claims with leave to amend. [Record Document 31]. Kostmayer then filed Plaintiff's First Amended Complaint ("Amended Complaint"), which alleged the following:

> Plaintiff wasted valuable time reviewing the fax, time that was taken away from its construction business, and time that it could have otherwise spent performing construction work. Additionally, Defendant's junk faxes tied up the fax line Plaintiff relies on for business use and misappropriated and converted Plaintiff's paper and toner. Further, Plaintiff has suffered an injury, created by Congress, in that it has been deprived of its right to receive the required opt-out notice disclosures on facsimile advertisements governed by the TCPA.

[Record Document 32 at 3–4]. In response, Port Pipe filed a Motion to Dismiss Amended Complaint, or, Alternatively Motion to Strike ("Second Motion to Dismiss"), claiming that the Amended Complaint still failed to allege a concrete injury and thus that Kostmayer lacked standing to sue. [Record Document 34]. In the alternative, Port Pipe asks the Court to strike the class allegations from the Amended Complaint, reiterating the arguments raised in its Appeal of the Magistrate's Order. [*Id.* at p. 8].

## II. LAW AND ANALYSIS

As discussed below, the Court construes one of Port Pipe's arguments in its Second Motion to Dismiss as an argument that the Amended Complaint fails to state a claim upon which relief can be granted (a Rule 12(b)(6) motion), rather than as an argument that Kostmayer lacks standing

3

(properly raised by a Rule 12(b)(1) motion). Additionally, Port Pipe's Motion to Strike overlaps with its Appeal of the Magistrate's Order. Therefore, the Court addresses Port Pipe's arguments in the following manner: (1) Port Pipe's 12(b)(1) Motion to Dismiss; (2) Port Pipe's 12(b)(6) Motion to Dismiss; (3) Port Pipe's 12(f) Motion to Strike and its Appeal of the Magistrate's Order.

### A. Port Pipe's 12(b)(1) Motion to Dismiss

In its 12(b)(1) motion, Port Pipe argues that Kostmayer has insufficiently pleaded facts that state an actual, concrete injury and thus that Kostmayer does not meet the injury in fact requirement for standing. [Record Document 34-1 at 1]. In opposition, Kostmayer contends that it has pleaded a cognizable injury under the TCPA and the JFPA as well as facts identifying actual, concrete injuries. [Record Document 39 at 9].

#### 1. Federal Rule of Civil Procedure 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for the dismissal of a plaintiff's claims for lack of subject matter jurisdiction. "'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'" *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). The plaintiff bears the burden of establishing subject matter jurisdiction. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (citing *Castro v. United States*, 560 F.3d 381, 386 (5th Cir. 2009)). To determine whether it has subject matter jurisdiction, the Court can look to "the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of

the disputed facts." *Id.* at 287 (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

A defendant's Rule 12(b)(1) motion is a "facial attack" if it is not supplemented with affidavits, testimony, or other evidentiary materials. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In considering a "facial attack," the Court "is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands." *Id.* Because Port Pipe submitted no evidence with its Rule 12(b)(1) motion, it has raised a "facial attack;" thus, the Court need only determine whether the Amended Complaint sufficiently alleges the necessary jurisdictional facts.

### 2. Standing Requirement for Federal Subject Matter Jurisdiction

The jurisdiction of federal courts is limited to "cases" and "controversies" that are "amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (citing *Muskrat v. United States*, 219 U.S. 346, 356–57 (1911)). For a case to be justiciable, the plaintiff must have standing. *Id.* (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Standing requires that the plaintiff have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Friends of the Earth v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 180–81 (2000)). At the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating each element." *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Here, the parties dispute whether Kostmayer has adequately alleged that it suffered an injury in fact. [Record Documents 34-1 at 4–8 and 39 at 8–16].

When alleging injury caused by the violation of a statutory right, a plaintiff must allege an injury that is both "concrete" and "particularized." *Id.* at 1549. A particularized injury is one that "affects the plaintiff in a personal and individual way." *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560 n.1). A concrete injury is one that exists, whether tangible or intangible. *Id.* at 1548–49. Thus, a plaintiff cannot survive a 12(b)(1) dismissal through "[a]llegations of a bare procedural violation, divorced from any concrete harm." *Id.* at 1549 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 490 (2009)). While a mere procedural violation is insufficient, the Supreme Court has cautioned that "[t]his does not mean that the risk of real harm cannot satisfy the requirement of concreteness." *Id.* (citing *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2012)).

### 3. The TCPA and the JFPA

The TCPA as amended by the JFPA makes it unlawful "to use any telephone facsimile machine [("fax machine")], computer, or other device to send, to a [fax machine], an unsolicited advertisement." 47 U.S.C. § 227(b)(1)© (2012). An unsolicited advertisement does not violate the statute if the sender can demonstrate that: (1) it has an established business relationship with the recipient; (2) it obtained the number of the fax machine through voluntary communication between the sender and recipient or from a public source on which the recipient voluntarily made the number available; and (3) the unsolicited advertisement contained an opt-out notice meeting the requirements of the statute. *Id.* § 227(b)(1)(C)(i)–(iii). The TCPA provides a private right of action to enjoin violations and to recover the greater of a plaintiff's actual monetary loss or $500 per violation. *Id.* § 227(b)(3).

### 4. Analysis

6

The parties dispute the issue of standing in three respects. The first issue is whether Kostmayer's alleged injuries of wasted time in reviewing unsolicited fax advertisements and misappropriated paper and ink toner are sufficient to establish concrete harm under the TCPA and the JFPA. The second is whether any such harm is de minimis, which Port Pipe claims would be insufficient to establish standing. The third is whether the receipt of unsolicited fax advertisements that do not include the required opt-out notice is a concrete harm, in and of itself, under the JFPA.

First, Port Pipe contends that Kostmayer's Amended Complaint alleges damages that are little more than the "conclusory allegations of statutory damages" pleaded in the original Complaint, and, thus that the Amended Complaint does not state the concrete injury necessary to confer standing. [Record Document 34-1 at 4–5]. In its Amended Complaint, Kostmayer pleaded:

> As a result of Defendant's faxes, Defendant has imposed disruption, annoyance, and cost on Plaintiff. Among other things, these faxes misappropriate and convert Plaintiff's paper and toner, all while requiring Plaintiff to review and sort through faxes to separate legitimate fax communications from junk fax advertisements and to discard the latter, thus wasting valuable time that could be devoted to its business.

[Record Document 32 at 1–2]. Kostmayer contends that district courts have held that these injuries are sufficient to create standing. [Record Document 39 at 12–14].

Courts, post-*Spokeo*, have repeatedly held that a plaintiff can establish concrete injury from a violation of the TCPA and the JFPA by alleging wasted time in reviewing unsolicited fax advertisements and the use of paper and ink toner in printing those advertisements. *See, e.g., Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 318 F.R.D. 712, 720 n.3 (N.D. Ill. 2016) (citing *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013)); *Fauley v. Drug Depot, Inc.*, 204 F. Supp. 3d 1008, 1011 (N.D. Ill. 2016); *Fairway Med. Ctr. LLC v. McGowan*

*Enters., Inc.*, No. 16-cv-3782, 2017 WL 1423883 (E.D. La. Jan. 25, 2017); *Sartin v. EKF Diagnostics, Inc.*, No. 16-cv-1816, 2016 WL 7450471 (E.D. La. Dec. 28, 2016); *Brodsky v. HumanaDental Ins. Co.*, No. 1:10-cv-03233, 2016 WL 5476233 (N.D. Ill. Sept. 29, 2016), *class decertified on other grounds*, No. 1:10-cv-03233, 2017 WL 3704824 (N.D. Ill. Aug. 28, 2017)). For instance, in *Sartin v. EKF Diagnostics, Inc.*, the Eastern District of Louisiana held that wasted time in reviewing an unsolicited fax and the occupation of the fax line on which the plaintiff relied for his business were concrete injuries. 2016 WL 7450471, at *1, *4–5; *see also Fairway Med. Ctr.*, 2017 WL 1423883 (relying on the reasoning set forth in *Sartin* to find that a similarly-situated plaintiff had standing). In reaching this conclusion, the court employed the reasoning of the Northern District of Illinois in a similar case to determine that wasted time and the occupation of the plaintiff's fax line and machine were particularized and concrete injuries because "Congress 'enacted the TCPA's restrictions on unwanted faxes to protect citizens from the loss of the use of their fax machines during the transmission of fax data.'" *Id.* at *4 (quoting *Brodsky*, 2016 WL 5476233, at *10–11). The court also referenced the legislative history of the TCPA in which Congress noted that "consumers have identified, *inter alia*, wasted time and tied up machines as problems caused by unsolicited calls and faxes." *Id.* (citing S. Rep. No. 102-178, at 2 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1969). Similarly, the Northern District of Illinois has held that "real harm, including loss of paper and toner consumed in the printing of the fax, loss of use of his telephone line and fax machine during receipt of the unsolicited fax, and loss of time receiving, reviewing, and disposing of the fax . . . . are sufficiently 'real' to meet the concreteness requirement under *Spokeo*." *Fauley*, 204 F. Supp. 3d at 1011; *see also Brodsky*, 2016 WL 5476233, at *11 ("Plaintiff's injuries

... are also 'concrete' . . . . Plaintiff alleges that the Subject Faxes occupied his fax line and machine, used his toner and paper, and wasted his time.").

The cases that Port Pipe cites in support are not persuasive. In *Susinno v. Work Out World, Inc.*, the Northern District of New Jersey held that a plaintiff who received a single unsolicited call that she did not answer and was left a one-minute promotional voicemail message lacked standing under the TCPA. *See Susinno v. Work Out World, Inc.*, 862 F.3d 346, 348 (3d Cir. 2017) (describing the district court opinion).[1] After Port Pipe filed the instant motion, the Third Circuit reversed this order, holding that Susinno's alleged injuries satisfied the "concreteness" requirement. *Susinno*, 862 F.3d at 352. In the other case cited by Port Pipe, *Supply Pro Sorbents, LLC v. Ringcentral, Inc.*, the plaintiff had received a solicited fax that came with an optional cover sheet on which was a one-line unsolicited advertisement. No. C 16-02113, 2016 WL 5870111, at *3 (N.D. Cal. Oct. 7, 2016)). The district court held that while the plaintiff did allege injuries such as waste of time and loss of paper and ink toner that businesses in general suffer when they receive unsolicited faxes, the plaintiff did not explain how "it specifically suffered these particular harms from the single line identifier on the optional cover sheet of a solicited four-page fax it received." *Id.* Unlike the faxes at issue in *Supply Pro Sorbents*, the unsolicited fax advertisements that Kostmayer alleges it received were full-page advertisements, and neither party suggests that they were attached to a solicited fax. [Record Documents 1-1 at 1-8 and 32 at 1]. Moreover, unlike the plaintiff in *Supply Pro Sorbents* who relied upon abstract allegations of the injuries caused by junk faxes, Kostmayer has alleged particular injuries that it personally suffered. [Record Document 32 at 3–4].

---

[1] The district court's order is a one-sentence note that grants the motion to dismiss for the reasons stated in open court. *Susinno v. Work Out World, Inc.*, No. 3:15-cv-5881 (D.N.J. Aug. 1, 2016), ECF 26.

9

Accordingly, the Court agrees with the reasoning of the district courts in the Eastern District of Louisiana and the Northern District of Illinois that, post-*Spokeo*, allegations of lost paper and ink and wasted time due to the receipt of unsolicited fax advertisements suffice to establish concrete injury in the context of an alleged JFPA violation.

Second, Port Pipe argues that the damages Kostmayer alleges are de minimis and, therefore, do not give rise to standing. [Record Document 34-1 at 6]. Port Pipe contends that a court must determine whether TCPA and JFPA damages are de minimis as to each individual fax. [*Id.*]. Although Kostmayer makes no discernible response to this argument, the Court nevertheless finds the argument unavailing. As the Fifth Circuit has stated:

> Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute.
>
> [W]here, as here, a plaintiff's claim of injury in fact depends on legal rights conferred by statute, it is the particular statute and the rights it conveys that guide the standing determination. Essentially, the standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief. Hence the 'injury in fact' analysis for purposes of Article III is directly linked to the question of whether the plaintiff has suffered a cognizable statutory injury under the statute in question.

*Wendt v. 24 Hour Fitness USA, Inc.*, 821 F.3d 547, 552 (5th Cir. 2016) (internal citations and quotations omitted). As discussed above, the harms of wasted time and lost paper and ink are sufficient to establish a concrete injury under the JFPA. The remedies under the private right of action that Congress included in the TCPA apply to "each such violation." 47 U.S.C. § 227(b)(3). To hold that wasted time and the loss of paper and ink for receipt of one unsolicited fax advertisement are insufficient to confer standing because they are de minimis would be to effectively

revoke the private right of action created by Congress. Other courts have rejected similar arguments that "there must be a specific amount of time or toner lost to confer Article III standing." *Fauley*, 204 F. Supp. 3d at 1011 (collecting cases).

While Port Pipe provides a case indicating that the cost associated with a single fax is only a few cents, *see Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 900 (W.D. Tex. 2001), the authorities that Port Pipe cites in order to argue that this cost is insufficient to create standing are distinguishable. First of all, *Ingraham v. Wright* stands for the proposition that certain de minimis injuries are not cognizable under the Due Process Clause and so does not speak to the present situation of standing to raise a statutory violation. *See* 430 U.S. 651, 674 (1977) ("There is . . . a de minimis level of imposition with which the *Constitution* is not concerned." (emphasis added)). Port Pipe also cites two district court cases for the proposition that "a waste of paper, toner, and time" is a de minimis injury. [Record Document 34-1 at 7]. However, neither of these cases involved faxes. The first, *Smith v. Aitima Medical Equipment, Inc.*, involved a single telephone call a few seconds in length. No. ED CV 16-00339-AB (DTBx), 2016 WL 4618780, at *4 (C.D. Cal. July 29, 2016). The second, *Olmos v. Bank of America, N.A.*, involved two text messages. No. 15-CV-2786-BAS-BGS, 2016 WL 3092194, at *1 (S.D. Cal. June 1, 2016). Moreover, the *Olmos* court actually found that standing existed under the TCPA; the claim that it dismissed on the grounds of a de minimis injury was a state-law claim. *Id.* at *6–7, *11. Port Pipe also relies heavily on the district court's opinion in *Romero v. Dep't Stores Nat'l Bank*, which found that a plaintiff lacked standing to bring TCPA claims for automated telephone calls that she did not hear ring and for calls that she heard ring but did not answer. 199 F. Supp. 3d 1256, 1263 (S.D. Cal. 2016). These situations

are distinguishable because Kostmayer has alleged that it received the faxes and expended time handling them. [Record Document 32 at 1–2]. The *Romero* court also found a lack of standing for calls that the plaintiff did answer because she had not demonstrated how the statutory violation at issue (i.e., using an automated telephone dialing system) "caused her greater lost time, aggravation, and distress than she would have suffered had the calls she answered been dialed manually, which would not have violated the TCPA." *Romero*, 199 F. Supp. 3d at 1263. Here, the alleged statutory violation occurred when Port Pipe sent the faxes to Kostmayer; the injuries Kostmayer alleges (wasted time and use of its ink and paper) occurred as a result of its receipt of the unsolicited faxes that were allegedly sent in violation of the JFPA. Accordingly, the Court rejects Port Pipe's argument that Kostmayer's alleged injury is de minimis and, thus, does not confer standing. Therefore, the Court denies Port Pipe's 12(b)(1) motion to dismiss Kostmayer's claims for lack of standing.[2]

### B. Port Pipe's 12(b)(6) Motion to Dismiss

Port Pipe argues that Kostmayer did not allege that it received the faxes on a fax machine, but rather only alleged that the faxes were sent to a "telephone number." [Record Document 34-1 at 3]. According to Port Pipe, this implies that Kostmayer received the faxes on a computer, which would mean that any use of paper and toner to print the faxes was at Kostmayer's discretion. [*Id.* at 3, 5]. Port Pipe contends that the language of the JFPA does not create a cause of action for unsolicited faxes received on a computer rather than on a stand-alone fax machine. [*Id.* at 5].

Although not styled as such, Port Pipe's argument in this respect is properly construed as a

---

[2] Because the Court finds that Kostmayer has alleged sufficient facts to establish the concrete injury necessary to confer standing, the Court declines to consider Kostmayer's argument that it has standing because it has suffered the intangible injury of not being afforded the opportunity to opt out of receiving the unsolicited fax advertisements. [Record Document 39 at 14–15].

motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010) (citing *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 359, 381–84 (1958)) (addressing a question of the scope of a statute as a failure to state a claim even though lower courts had treated the issue as one of subject matter jurisdiction). Accordingly, the Court considers this argument under the standard for a motion to dismiss under Rule 12(b)(6). When considering such a motion, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (internal quotation omitted) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)). Allegations must be more than merely speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 Charles A. Wright et al., *Federal Practice & Procedure*, § 1216 (3d ed. 2004)). Instead, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility, in turn, requires that the facts pleaded be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); *Gonzalez*, 577 F.3d at 603 (citing *Iqbal*, 556 U.S. at 678).

In response to Port Pipe's argument, Kostmayer contends that whether the fax was received on a fax machine or on a computer is "a distinction without a difference" and argues that a plaintiff may state a claim for violation of the JFPA even if the unsolicited fax is received on a computer. [Record Document 39 at 5, 13]. In support, Kostmayer cites the Sixth Circuit's opinion in *American Copper & Brass, Inc. v. Lake City Industrial Products, Inc.* [Record Document 39 at 13–14].

13

*American Copper* collected cases discussing the injuries inflicted by unsolicited faxes that had been sent to a computer—time wasted in reviewing the faxes on the computer, telephone lines tied up, and company switchboards burdened in routing the fax to a computer. 757 F.3d 540, 544–45 (6th Cir. 2014) (citing *Ira Holtzman, C.P.A.*, 728 F.3d at 684; *Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814, 820 (8th Cir. 2012); *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649, 655 (8th Cir. 2003)). Kostmayer further directs the Court to an FCC ruling that faxes sent to a computer or fax server fall within the scope of the TCPA. [*Id.* at 5 n.1].

The TCPA makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)©. The TCPA defines the term "telephone facsimile machine" as:

> [E]quipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.

*Id.* § 227(a)(3). "The TCPA's definition of 'telephone facsimile machine' broadly applies to any equipment that has the capacity to send or receive text or images," which may include devices other than stand-alone fax machines, such as computers equipped with, or attached to, modems. *Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14133 (1991); *see also Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, No. 1:09-CV-1162, 2013 WL 3654550, at *5 (W.D. Mich. July 12, 2013) (echoing the definition), *aff'd*, 757 F.3d 540 (6th Cir. 2014).

In its Amended Complaint, Kostmayer alleges that on at least six dates between May 2015 and February 2016, Port Pipe "sen[t] unsolicited facsimile advertisements . . . from telephone

14

facsimile machines, computers, or other devices to telephone facsimile numbers of Plaintiff and members of the Plaintiff class." [Record Document 32 at 3]. Accepting these alleged facts as true and viewing them in the light most favorable to Kostmayer, the Court finds that it is reasonable to infer that Port Pipe sent the unsolicited fax advertisements to Kostmayer's fax line, which was connected to equipment capable of transcribing the fax onto paper, in violation of the TCPA.

Port Pipe is correct that if a receiving machine is a computer rather than a traditional fax machine, costs such as wasted paper and ink are not automatically incurred. [Record Document 34-1 at 7]. However, the FCC rulings interpreting the statute as extending to faxes transmitted over a telephone line but received via email or through a fax server incline this Court to favor Kostmayer's interpretation of the statute. *See Westfax, Inc.*, 30 FCC Rcd. 8620, 8622–23 (2015); *Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. at 14133. Port Pipe asks the Court to disregard the FCC opinions, but Port Pipe's claim that the TCPA applies only to "faxes received on a fax machine and automatically printed," [Record Document 40 at 3 n.1], is itself a distortion of the statute. The statutory language requires only that the receiving device have the "capacity" to print the fax, not that the device "automatically" print the fax. *See* 47 U.S.C. § 227(a)(3).

Thus, because Kostmayer has stated a claim for relief that is plausible on its face, the Court denies Port Pipe's motion to dismiss on this theory.

### C. Port Pipe's Alternative Motion to Strike and Port Pipe's Appeal of the Magistrate's Order

Port Pipe moves the Court, in the alternative to its Motion to Dismiss, to strike any and all

class action allegations pursuant to Federal Rule of Civil Procedure 12(f). [Record Document 34]. This motion repeats the request for relief and arguments in support of Port Pipe's Appeal of the Magistrate's Order that granted Kostmayer's Motion for Enlargement of Time Frame. In briefing the Rule 12(f) motion, both parties merely refer the Court to their briefings for the Appeal of the Magistrate's Order. [Record Documents 34-1 at 8 and 39 at 16–17]. Accordingly, the Court considers the Rule 12(f) motion and the appeal together.

On September 30, 2016, the Magistrate Judge granted Kostmayer's Motion for Enlargement of Time Frame and provided Kostmayer thirty days from receipt of discovery to file its Motion for Class Certification. [Record Document 27 at 4]. In reaching this decision, the Magistrate Judge reasoned:

> While this motion to extend the time frame is itself untimely we find that circumstances surrounding the failure to timely file the motion excuse this inadvertence. *See* Fed. R. Civ. P. 6(b)(1)(B). In arriving at this decision, we have considered the fact that this case was filed in a different venue, transferred here, the pending motion to dismiss, mover's unsuccessful attempt to obtain discovery, and the fact that there is no pending trial date so the plaintiff [sic] is not prejudiced by this extension.

[Record Document 27 at 3–4]. Port Pipe argues that the Magistrate's Order is contrary to law because the Magistrate Judge did not apply the "excusable neglect" standard or consider the appropriate factors when evaluating Kostmayer's untimely Motion for Enlargement of Time Frame. [Record Document 28 at 4–5]. Port Pipe also contends that the reasons stated by the Magistrate Judge do not support findings of excusable neglect for the untimely request or of good cause for granting the extension of time. *Id.* at p. 5.

An appeal of a magistrate judge's order involving nondispositive matters is reviewed under

16

a clearly erroneous or contrary to law standard. Fed. R. Civ. P. 72(a); *Alphonse v. Arch Bay Holdings*, 618 F. App'x 765, 768 (5th Cir. 2015). A finding is clearly erroneous when a reviewing court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Stevens*, 487 F.3d 232, 240 (5th Cir. 2007) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Pursuant to Federal Rule of Civil Procedure 23 governing class actions, "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). This rule sets no specific time frame for such a determination, but this Court's local rules require that a motion for class certification be filed within ninety days of the complaint. Local Rule 23.1(B). Before the expiration of the ninety days, the court may extend the deadline for good cause shown. *Id.* If the ninety-day period has already elapsed, the court may grant an extension of time for good cause if the plaintiff failed to act because of excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B). Rule 6(b) grants district courts "broad discretion to expand filing deadlines." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995).

"The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters. v. S. Tr. Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Wright, *supra*, § 1522.1). A determination of what neglect is "excusable" "is at bottom an equitable one, taking account of *all* relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (emphasis added). Circumstances to consider include "the danger of prejudice to the [opposing party], the length of delay and its potential impact on

17

judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* Because classifying neglect as "excusable" is an equitable determination that considers all relevant factors, the list of possible factors in *Pioneer* is merely illustrative. Therefore, despite Port Pipe's claim to the contrary, [Record Document 28 at 5], the Magistrate Judge did not err by omitting a discussion of each factor identified in *Pioneer*. Moreover, the Court need not find a movant blameless in order to find that his neglect was "excusable." *Id.* at 395 n.14. In fact, the Supreme Court has implied that the choice of the term "neglect" indicates that courts should not "erect[] a rigid barrier against late filings attributable in any degree to the movant's negligence." *Id.*

Here, the Magistrate Judge found "good cause" to extend the time frame because Kostmayer "ha[d] yet to obtain information pertinent to the filing of its motion as a result of the pending motion to dismiss and Port Pipe's position regarding discovery." [Record Document 27 at 3].[3] The Magistrate Judge also considered the circumstances of the case relevant to a determination of "excusable neglect," including the transfer of venue, the pending motion to dismiss, the lack of discovery, and the fact that no trial date had yet been set. [*Id.* at 3–4]. The Court notes that Port Pipe disagrees with the outcome of the Magistrate Judge's consideration and refers the Court to cases in which other judges decided differently. [Record Document 28]. However, the Court has broad

---

[3] Port Pipe argues that the Magistrate Judge's finding that the lack of discovery excuses Kostmayer's late filing is based on a factual error because Kostmayer had not propounded any discovery until after the ninety-day deadline had passed. [Record Document 37 at 5 & n.4]. This appears to be true, however, the fact that Port Pipe sought a protective order delaying discovery until the Court ruled on its 12(b)(1) motion suggests that Port Pipe was not necessarily amenable to discovery. Moreover, the Magistrate Judge's ruling can be affirmed even if Port Pipe was utterly blameless in the lack of discovery because the lack of discovery could constitute good cause to extend the deadline. Similarly, a failure to propound discovery while a venue dispute is ongoing can be considered a form of excusable neglect.

18

discretion in expanding filing deadlines. *Hetzel*, 50 F.3d at 367 (citing Fed. R. Civ. P. 6(b)(1)). Expanding them is thus not contrary to law. The Court is not firmly convinced "that a mistake has been committed." *Stevens*, 487 F.3d at 240 (quoting *U.S. Gypsum Co.*, 333 U.S. at 395). The Court thus cannot find that the Magistrate Judge's finding of excusable neglect, whether or not stated in those terms, is clearly erroneous. Accordingly, the Court will affirm the Magistrate Judge's ruling and deny Port Pipe's Rule 12(f) Motion to Strike.

### III. CONCLUSION

For the foregoing reasons:

**IT IS ORDERED** that the Defendant's Motion to Dismiss Amended Complaint or, Alternatively, Motion to Strike [Record Document 34] is **DENIED**.

**IT IS FURTHER ORDERED** that the Magistrate Judge's Memorandum Order of September 30, 2016 [Record Document 27] is **AFFIRMED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 1st day of November, 2017.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE